1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  AUGUSTUS NELSON,              )  Civil No. 11-2202-GPC(WVG)
                                  )
12                 Plaintiff,     )  REPORT AND RECOMMENDATION
                                  )  GRANTING DEFENDANTS' MOTION
13  v.                            )  TO DISMISS
                                  )  (DOC. NO. 21)
14  ARMAND FAVILA, DOUG DEGEUS,   )
    M. GARCIA,                    )
15                                )
                   Defendants.    )
16                                )
                                  )
17  _____ )

18                                I

19                          INTRODUCTION

20        Plaintiff Augustus Nelson (hereinafter "Plaintiff"), a state

21  prisoner proceeding *pro se* and *in forma pauperis*, filed a Second

22  Amended Civil Rights Complaint (hereinafter "SAC") under 42 U.S.C.

23  § 1983.  Defendants A. Favila, M. Garcia, and D. Degeus, (hereinaf-

24  ter "Defendants") filed a Motion to Dismiss, and a Wyatt Notice

25  pursuant to Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).

26  On August 7, 2012, the Court also provided Plaintiff with a Notice

27  pursuant to Wyatt.

28

1          The Court, having reviewed Plaintiff's SAC, Defendant's

2    Motion to Dismiss, Plaintiff's Opposition and Defendant's Reply, and

3    GOOD CAUSE APPEARING, HEREBY RECOMMENDS that Defendant's Motion to

4    Dismiss be GRANTED and that Plaintiff's SAC be DISMISSED WITHOUT

5    PREJUDICE.

6                                     II

7                            FACTUAL ALLEGATIONS

8          This statement of facts is based, in large part, upon the

9    allegations in Plaintiff's SAC and the administrative appeals that

10   were attached to the First Amended Complaint as exhibits.[1]  At

11   Plaintiff's request, the Court attached those exhibits to the Second

12   Amended Complaint, and has cited them herein.  (SAC at 34.)

13         Plaintiff was a state prisoner at Centinela State Prison at

14   the time of the events herein.  (SAC at 1.) Plaintiff currently

15   resides at the California Men's Colony.  (Opposition to Motion to

16   Dismiss.)

17         On March 15, 2007, a prison security officer searched

18   Plaintiff's cell, which was jointly occupied by another inmate, and

19   found an inmate-manufactured weapon.  (Id. at 3; Motion to Dismiss

20   at 1.)  On March 20, 2007, prison authorities issued Plaintiff a CDC

21   115 Rules Violation Report ("RVR") for possession of an inmate-

22   manufactured weapon.  (SAC at 3; Motion to Dismiss at 1.)

23         On April 13, 2007, a Senior Hearing Officer ("SHO") conducted

24   a disciplinary hearing and found Plaintiff guilty of possessing an

25

26

27

28        [1]The Court notes that Plaintiff's First Amended Complaint, which contained
     exhibits was supplanted by the SAC.

1   inmate-manufactured weapon.[2]   (SAC at 3; Motion to Dismiss at 1.)

2   On May 23, 2007, approximately 40 days later, Plaintiff was issued

3   an "Inmate Copy" of the "Findings of Evidence" and "Final Disposi-

4   tion" of that disciplinary hearing ("Inmate Copy").   (SAC at 3;

5   Motion to Dismiss at 1.)   The Inmate Copy was dated May 21, 2007.

6   (SAC at 3; Motion to Dismiss at 1.)

7         On May 31, 2007, an Institutional Classification Committee

8   ("ICC") hearing was conducted to review the SHO's findings.   (SAC at

9   15; Motion to Dismiss at 2.)   Plaintiff attended the hearing.   (SAC

10   at 15; Motion to Dismiss at 2.)   At the hearing, the ICC affirmed

11   the SHO's guilty finding for possession of an inmate-manufactured

12   weapon.   (SAC at 15; Motion to Dismiss at 2.)   As a result, the ICC

13   imposed an eight-month term in the Security Housing Unit ("SHU") and

14   increased Plaintiff's custody classification points.   (Institutional

15   Classification Committee Report  - Exhibit 1 at 37.)[3]   On June 25,

16   2007, Plaintiff was provided with an Inmate Copy of the ICC's

17   decision.   (SAC at 16; Motion to Dismiss at 2.)

18         On July 8, 2007, Plaintiff filed an inmate appeal challenging

19   the original guilty finding.   (SAC at 16; Motion to Dismiss at 2.)

20

21   [2]Plaintiff does not explicitly address whether he attended the initial
   disciplinary hearing.  However, in Plaintiff's Second Level Appeal he refers to
   being "advise[d] and assist[ed]" in the "preparation of the hearing," and notes

22   specific circumstances that surrounded the hearing.  Nowhere does Plaintiff assert
   that he did not attend the hearing, nor that he was deprived of an opportunity to
   appear before the SHO.  Based on these reasons and on the information contained

23   in Plaintiff's SAC and Exhibits, this Court concludes that Plaintiff was present
   for the initial disciplinary hearing on April 13, 2007.

24   Additionally, it is unclear from the record whether the SHO informed
   Plaintiff of the guilty finding at the time of the hearing on April 13, 2007.

25   However, Plaintiff does not assert in his SAC or Exhibits that he was not informed
   of the disposition any time after the initial finding of guilt.   Nor does
   Plaintiff assert that he was not informed of the SHO's finding in a timely manner.

26   Plaintiff's sole contention is that he was not provided with *copies* of the
   disposition in a timely manner.  Therefore, this Court finds that Plaintiff was

27   aware of the SHO's guilty finding at the time the decision was rendered.

28   [3]All of Plaintiff's Exhibits cited herein refer to the ECF pagination
   number, as Plaintiff combined all individual documents into one Exhibit.

On July 11, 2007, a prison appeals coordinator "screened out" Petitioner's appeal for being untimely. (SAC at 16; Motion to Dismiss at 2; Screening at Second Level - Exhibit 4 at 42.) On July 22, 2007, Plaintiff resubmitted the appeal. (Complaint at 18; Motion to Dismiss at 2.) On July 24, 2007, the prison appeals coordinator "screened out" and cancelled the appeal again for untimeliness. (Complaint at 18; Motion to Dismiss at 2; Re-screening at Second Level - Exhibit 6 at 45.) On August 8, 2007, Plaintiff submitted his rejected inmate appeal to the Chief of Inmate Appeals. (Complaint at 22; Motion to Dismiss at 2.) On September 19, 2007, Plaintiff's appeal was rejected based on his failure to receive a second-level appeal decision at the institutional level. (SAC at 22; Motion to Dismiss at 2; Director's Level Review - Exhibit 7 at 47.)

III

<u>PLAINTIFF'S CLAIMS</u>

Plaintiff's SAC contains two causes of action. First, Plaintiff alleges that his due process rights under the Fourteenth Amendment were violated by Defendants' failure to provide him with an Inmate Copy[4/] of the SHO's findings within five working days of the decision in accordance with Cal. Code of Regs. 15, art. 5 § 3320(l). (SAC at 4-7.) Second, Plaintiff alleges that he was deprived of his First Amendment right to redress of grievances when Defendants failed to process his inmate appeals. (SAC at 13-23;

---

[4/] Plaintiff contends that his "Inmate Copy" included the "Findings, Evidence, and Final Disposition of the CDC 115, Rules Violation Report, prepared by the Senior Hearing Officer... regarding his review of the CDC 115, RVR, at the disciplinary hearing." (SAC at 3.)

1   Motion to Dismiss at 10-11.)  He asserts that the violation of these

2   rights resulted in "atypical and significant hardship." (SAC at 6.)

3   Plaintiff's claims are brought against Chief Deputy Warden

4   Armando Favila, Doug Degeus, Appeals Coordinator, and M. Garcia,

5   Office Technician.  All defendants are named in their individual and

6   official capacities.

7   Plaintiff claims that he was deprived of due process when

8   Defendants provided him with the Inmate Copy approximately 40 days

9   after the disciplinary hearing.  He asserts that since the Califor-

10  nia Code of Regulations require that inmates be provided an Inmate

11  Copy within five working days following a disciplinary finding, the

12  40-day delay had a "chilling effect" on his "ability to [administra-

13  tively] challenge the disciplinary findings." (SAC at 4-5 citing to

14  Cal. Code of Regs. 15, art. 5 § 3320(l)).  Plaintiff contends that

15  receipt of the Inmate Copy 40 days after the decision "infringed

16  upon his First Amendment right" to timely appeal the finding. (SAC

17  at 13.)  He concedes that in accordance with California Code of

18  Regulations 15, art. 8 § 3084.1 (a), an inmate is required to file

19  an appeal within 15 days after a disciplinary decision. (Complaint

20  at 13.)  However, Plaintiff alleges, due to the delay in receipt of

21  the Inmate Copy, he was deprived of his ability to timely appeal the

22  decision. (Id.)

23  Plaintiff claims that, as a result of his inability to

24  successfully appeal the disciplinary decision, his housing assign-

25  ment was changed to the SHU, he was "subjected to" forfeiture of his

26  job assignment and a decrease in his work group privilege status, he

27  was transferred from a low level-III institution to a higher level-

28

1  IV institution, and his custody classification status increased.

2  (SAC at 6-7.)

3      Plaintiff seeks compensatory, punitive, special, and nominal

4  damages from each defendant, costs of filing fees, and attorney

5  fees.[5/]  (SAC at 33.)  Further, he seeks for the Court to vacate and

6  dismiss the disciplinary finding of guilt.  (Id.)

7                              IV

8                     PROCEDURAL HISTORY

9      On March 15, 2007, a prison security officer searched

10  Plaintiff's cell and found an inmate-manufactured weapon.  (SAC at

11  3.)  As a result, Plaintiff was issued a CDC 115 Serious Rules

12  Violation ("RVR") for the charge of "possession of an inmate-

13  manufactured weapon" pursuant to 15 Cal. Code of Regs. § 3006 (a)

14  (SAC at 3, Motion to Dismiss at 1).

15      A.   FIRST LEVEL HEARING

16      On April 13, 2007, Plaintiff appeared before Correctional

17  Lieutenant Parks, who served as the SHO.  The SHO determined that

18  Plaintiff was guilty of possessing an inmate-manufactured weapon.[6/]

19  On May 23, 2007, Plaintiff was issued an Inmate Copy of the

20  decision.  On May 31, 2007, the ICC reviewed the SHO's findings and

21  affirmed them.  The ICC imposed an eight-month term in the SHU.

22  (Exhibit 1 at 37.)  Additionally, the ICC increased Plaintiff's

23  custody classification points from 41 to 61.  (Exhibit 1 at 37.)

24

25      [5/]Plaintiff is precluded from obtaining an award of attorney's fees due to
26  his pro se status.  See Kay v. Ehrler, 499 U.S. 432, 438 (1991) (Pro se litigants
    are not entitled to attorney fees awards).

27      [6/]Curiously, neither Plaintiff nor Defendant have included the CDC 115 or
28  original RVR in their Exhibits.

1  The ICC did not alter Plaintiff's work assignment, nor his cell

2  status. (Exhibit 1 at 37.) On June 25, 2007, Plaintiff was

3  provided with an Inmate Copy of the ICC's decision. (SAC at 16;

4  Motion to Dismiss at 2.)

5       B.   INFORMAL LEVEL APPEAL

6       On June 21, 2007, Plaintiff filed an Informal Level appeal

7  requesting the Inmate Copy of the ICC's findings. (SAC at 15-16.)

8  He argued that "[t]he delay of th[o]se documents [were] hindering

9  [his] due process rights." In the section of the appeal form

10  labeled "Action Requested," Plaintiff requested "the prompt issuance

11  . . . of the Classification Committee 128-G Chrono," and supporting

12  documents, from the ICC hearing held on May 31, 2007. (Informal

13  Level Appeal - Exhibit 2 at 36.) Notably, this section of the

14  Informal Level Appeal omits the relief requested in the case now

15  before Court. On June 22, 2007, the appeal was partially granted,

16  and on June 25, 2007, Plaintiff received a copy of the requested

17  documents. (SAC at 16; Exhibit 2 at 36.)

18       C.   SECOND LEVEL APPEAL

19       On July 8, 2007, Plaintiff filed an appeal of the First Level

20  finding that he was guilty of possession of an inmate-manufactured

21  weapon. (Second Level Appeal - Exhibit 3 at 38.) For support,

22  Plaintiff attached the Findings, Final Disposition, and ICC Chrono.

23  (SAC at 16.) Plaintiff asserted that the information contained in

24  the CDC 115 and RVR were "false [and] perjured" and that the officer

25  who originally cited Plaintiff failed to appear at the disciplinary

26  hearing. (Exhibit 3 at 38-40.) He contended that these errors

27  violated his due process rights. (Exhibit 3 at 38.) Based on the

28

11cv2202

alleged improprieties, Plaintiff requested that the disciplinary action be reversed and dismissed, that the ICC action be rescinded, and that his custody status be reclassified. (Exhibit 3 at 38.)

On July 11, 2007, Defendants cancelled Plaintiff's appeal based on untimeliness, but allowed him to resubmit the appeal with an explanation of why it was untimely. (SAC at 16; Exhibit 4 at 42.) On July 22, 2007, Plaintiff resubmitted the appeal and explained that his appeal was untimely for "reasons beyond his control" and because he received the Inmate Copy "38 to 40 days after" the SHO's decision.[1/] (Complaint at 3, 16; Explanation of Appeal Delay – Exhibit 5 at 44.) Further, Plaintiff explained that based on the dates of the ICC and receipt of the ICC Chrono, his appeal was further delayed. (Exhibit 5 at 44.) Again, in Plaintiff's appeal, he did not address the relief requested in the case before this Court.

On July 24, 2007, Plaintiff's revised Second Level Appeal was screened out for untimeliness. (SAC at 16; Exhibit 6 at 45.) The screening form noted that although Plaintiff should have been provided a copy of the SHO's findings five days after the hearing, Plaintiff was required to submit his appeal within 15 working days after the decision. (Exhibit 6 at 45.)

---

[1/] Neither Plaintiff nor Defendants provided the Court with a copy of the Inmate Copy. Plaintiff indicated that the Inmate Copy was dated May 21, 2007. He noted that he did not receive the copy until May 23, 2007. Therefore, the number of days that lapsed between the SHO's hearing and the issuance of the Inmate Copy is dependent on either the day it was dated or the day Plaintiff received it. (See Exhibit 5 at 1.)

D.   DIRECTOR LEVEL'S REVIEW

On August 8, 2007, Plaintiff appealed the Second Level Response to the Director's Level.[8/]  (SAC at 22; Exhibit 7 at 47.) On October 1, 2007, Plaintiff received a letter, dated September 19, 2007, from the Chief of Inmate Appeals.  (Complaint at 22; Motion to Dismiss at 2; Exhibit 7 at 47.)  The letter informed Plaintiff that his appeal was screened out because it did not receive a Second Level decision.  (Exhibit 7 at 47.)

E.   CURRENT CASE

On March 16, 2012, Plaintiff filed the action now before the Court.  Plaintiff claims to have exhausted all available administrative remedies.  (SAC at 31.)

V

STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6) tests the legal sufficiency of the claims in the complaint. Fed. R. Civ. Pro. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007).  Dismissal of a claim is appropriate only where the complaint lacks a cognizable theory. Bell Atlantic, 550 U.S. at 553-565.  The court must accept as true all material allegations in

---

[8/] Neither Plaintiff nor Defendants provided the Court with a copy of this appeal.

11cv2202

the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. <u>N.L. Industries, Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986); <u>Parks School of Business, Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995). The court does not consider whether the plaintiff will "ultimately prevail." <u>Scheuer v. Rhodes</u>, 94 S.Ct. 1683, 1686 (1974).

"If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 625 n.1 (1991) [<u>quoting</u> <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir.1987)]. "[W]hen the allegations of the complaint are refuted by an attached document, the Court need not accept the allegations as being true." <u>Roth</u>, 942 F.2d 625 n.1 [<u>citing</u> <u>Ott v. Home Savings & Loan Ass'n</u>, 265 F.2d 643, 646 n.1 (9th Cir.1958)].

"The focus of any Rule 12(b)(6) dismissal... is the com-plaint." <u>Schneider v. California Dep't of Corrections</u>, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Thus, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings. <u>Id</u>. This precludes consideration of "new" allegations that may be raised in a plain-tiff's opposition to a motion to dismiss brought pursuant to Fed. R. Civ. Pro. 12(b)(6). <u>Id</u>. (<u>citing</u> <u>Harrell v. United States</u>, 13 F.3d 232, 236 (7th Cir. 1993); 2 <u>Moore's Federal Practice</u>, § 12.34[2] (Matthew Bender 3d ed.) ["The court may not . . . take into account

1   additional facts asserted in a memorandum opposing the motion to
2   dismiss, because such memoranda do not constitute pleadings under
3   Rule 7(a)."].

4    To state a claim under 42 U.S.C. § 1983, a plaintiff must
5   show: (1) that the conduct complained of was committed by a person
6   acting under color of state law; and, (2) that the conduct deprived
7   the plaintiff of a constitutional right. Broam v. Bogan, 320 F.3d
8   1023, 1028 (9th Cir. 2003); Balistreri v. Pacifica Police Dept., 901
9   F.2d 696, 699 (9th Cir. 1988).  Vicarious liability does not exist
10  under § 1983. Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009); Jones v.
11  Williams, 297 F.3d 930, 934 (9th Cir. 2002) (citations omitted).  To
12  hold a person "liable under section 1983 there must be a showing of
13  personal participation in the alleged rights deprivation." Id.  A
14  supervisory official may be liable only if he or she was personally
15  involved in the constitutional deprivation, or if there was a
16  sufficient causal connection between the supervisor's wrongful
17  conduct and the constitutional violation. See Redman v. County of
18  San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991).  Causation may be
19  established only by showing that the supervisor set in motion a
20  series of acts by others, which the supervisor knew or reasonably
21  should have known would cause others to inflict the injury. Watkins
22  v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998).

23   Finally, where a plaintiff appears *in propria persona* in a
24  civil rights case, the Court must be careful to construe the
25  pleadings liberally and afford plaintiff any benefit of the doubt.
26  See Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th
27  Cir. 1988); Bretz v. Kelman, 773 F.2d 1026, 1027, n.1 (9th Cir.
28

1   1985) (en banc).  The rule of liberal construction is "particularly
2   important in civil rights cases." Ferdik v. Bonzelet, 963 F.2d 1258,
3   1261 (9th Cir. 1992); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir.
4   1987) ("Presumably unskilled in the law, the pro se litigant is far
5   more prone to making errors in pleading than the person who benefits
6   from the representation of counsel.") In giving liberal interpreta-
7   tion to a pro se civil rights complaint, however, a court may not
8   "supply essential elements of the claim that were not initially
9   pled." Ivey v. Bd. of Regents of the University of Alaska, 673 F.2d
10  266, 268 (9th Cir. 1982).  "Vague and conclusory allegations of
11  official participation in civil rights violations are not sufficient
12  to withstand a motion to dismiss." Id.; see also Sherman v. Yakahi,
13  549 F.2d 1287, 1290 (9th Cir. 1977) ("Conclusory allegations,
14  unsupported by facts, [will be] rejected as insufficient to state a
15  claim under the Civil Rights Act."). Thus, at a minimum, even the
16  pro se plaintiff "must allege with at least some degree of particu-
17  larity overt acts which defendants engaged in that support [his]
18  claim." Jones v. Community Redevelopment Agency, 733 F.2d 646, 649
19  (9th Cir. 1984).

20                                  VI

21                              DISCUSSION

22       Defendants raise four grounds in support of their Motion to
23  Dismiss.  First, they contend that Plaintiff has not exhausted his
24  administrative remedies and thus has yet to satisfy the requirements
25  of the Prison Litigation Reform Act (hereinafter "PLRA").  (Motion
26  to Dismiss at 6.)  Second, Defendants argue that Plaintiff does not
27  have a due process right to inmate grievance procedures.  (Motion to

28

Dismiss at 10.)  Third, Defendants claim that Plaintiff has not alleged a due process violation because his placement in the SHU did not violate a protected liberty interest.  (Motion to Dismiss at 11.)  Fourth, Defendants argue that Plaintiff's claims should have first been brought as a petition for writ of habeas corpus.  (Motion to Dismiss at 15.)

> A.   PLAINTIFF HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES

Under the PLRA, an inmate who wishes to bring an action under 42 U.S.C. § 1983 regarding prison conditions must first exhaust the available administrative remedies. 42 U.S.C. § 1997e(a); see also Porter v. Nussle, 534 U.S. 516, 524 (2002) ("although exhaustion of administrative remedies is not ordinarily a prerequisite for suits under 42 U.S.C. § 1983, PLRA's exhaustion requirement applies to all inmate suits about prison life.")  Exhaustion of the available administrative remedies is determined by examining the relevant administrative appeal system. See Jones v. Bock, 549 U.S. 199, 218 (2007) ("The prison's requirements, and not the PLRA,... define the boundaries of proper exhaustion.").

Here, the applicable requirements are those governing the California State Prison system. Specifically, in order to exhaust administrative remedies, an inmate in this system must proceed through four levels: (1) informal resolution, (2) first formal level appeal, (3) second formal level appeal to the institution head, and (4) third level appeal to the Director of the California Department of Corrections. 15 C.C.R. § 3084.5, 3084.7; Parmer v. Alvarez, 2010 WL 4117465, *2 (S.D. Cal. 2010).  These steps must be completed

before the inmate files a claim in federal court. <u>Vaden v. Summer-hill</u>, 449 F.3d 1047, 1051 (9th Cir. 2006).

Plaintiff's claims are unexhausted for two reasons. First, Plaintiff has not exhausted all available administrative remedies with respect to his rules violation appeal because he failed to timely appeal the decision through the Director's Level Review. Second, Plaintiff has failed to show that he completed the four steps with regard to his current 42 U.S.C. § 1983 claims as pled in his Complaint.

### 1. Plaintiff Failed To Exhaust The Rules Violation Appeal

#### a. Defendants Afforded Plaintiff An Opportunity To Exhaust All Available Administrative Remedies

In Plaintiff's Opposition to Defendants' Motion to Dismiss (hereafter "Opposition"), Plaintiff asserts that administrative remedies were not made "available" to him to properly exhaust. (Opposition at 14-20, 24-25.) Specifically, Plaintiff claims that since he was not provided with the Inmate Copy of the final disposition until 38 to 40 days after the hearing where he was found guilty of being in possession of an inmate-manufactured weapon, he was prevented from timely appealing the decision. (SAC at 3, 4; Opposition at 20) ["(The delay made it) physically and humanly impossible to submit a (timely) (a)ppeal".]

Under Cal.Code of Regs. 15, § 3084.6(c), an inmate must submit an appeal within 15 working days *of the event or decision* being appealed. The appellant "shall not delay submitting an appeal within time limits . . . if unable to obtain supporting documents."[9]

---

[9]California Law defines "supporting documents," as documents that are necessary to "substantiate the allegations," including, but not limited to, disciplinary reports with supplements and incident reports. 15 Cal.Code.Regs. §

1   15 Cal.Code.Regs. § 3084.3(b); <u>see also</u> Declaration of J. Jimenez at

2   4 ["if such documents (are) unavailable... (Plaintiff is) still

3   required to submit his appeal... within the fifteen working day

4   deadline."]   If an inmate's appeal is submitted after the 15-day

5   deadline, the appeals coordinator may cancel or reject it.   15

6   Cal.Code.Regs. § 3084.6(c)(4).

7        Here, on May 31, 2007, CDCR authorities finalized the

8   findings that Plaintiff was guilty of possession of an inmate-

9   manufactured weapon.[10]   (Exhibit 2 at 36.)   Plaintiff filed an

10   appeal of the findings 38 days later, on July 8, 2007. (Exhibit 3

11   at 38.)   On July 11, 2007, Defendants screened out Plaintiff's

12   appeal as untimely. (Exhibit 4 at 42.)   Defendants allowed Plaintiff

13   to explain why his appeal was untimely.   (<u>Id</u>.)   His explanation,

14   that he could not file an appeal because he was not provided with

15   the necessary documents, was found to be insufficient.   (Exhibit 6

16   at 45.)   Even affording Plaintiff the benefit of the doubt, and

17   although Plaintiff attempted to obtain documents which he *believed*

18   were necessary to file his appeal, <u>see</u> III.IV.B, <u>supra</u>, "ignorance

19   of the law is no defense."   <u>See</u> <u>U.S. v. Int'l Minerals & Chemical</u>

20   <u>Corp.</u>, 402 U.S. 558, 563 (1971).

21

22

23   ────────────────
     3084.3(b) (2012).

24        [10]Plaintiff attended the review hearing, however, it is unclear whether the
     ICC informed Plaintiff of the affirmation of the SHO's guilty finding at the time

25   of the decision.   Plaintiff does not address this in his SAC or Exhibits.
     Plaintiff merely asserts that he was deprived of receiving *copies* of the decision

26   in a timely manner.   Therefore, this Court finds that Plaintiff was informed of
     the ICC's decision at the time of the hearing given that he does not assert

27   anything to the contrary.

28

1    Plaintiff claims he was unable to file a timely appeal from

2  the SHO's April 13, 2007 ruling because he had not received his

3  inmate copy of the final disposition until May 23, 2007, some 40

4  days later. (SAC at 3, 4; Opposition at 20.)  In affording Plaintiff

5  the benefit of the doubt, there were multiple events that may have

6  triggered the 15-day appeal clock.  However, Plaintiff's appeal is

7  untimely regardless of which triggering event is used to mark the

8  beginning of the 15-day time frame.

9         i.   The SHO hearing on May 23, 2007 As Triggering Event

10   Plaintiff apparently acknowledges and concedes that all he

11  was lacking to file his appeal was a copy of the final disposition,

12  received on May 23, 2007.  Yet, even using May 23, 2007 as the start

13  of the 15-day clock, Plaintiff waited either: 1) 29 days until June

14  21, 2007 to file an Informal Level Appeal (seeking only the ICC

15  report, not specifically appealing the SHO's findings); or 2) 46

16  days until July 8, 2007 to file a Second Level Appeal specifically

17  appealing the SHO's finding.  Either way, and without justification,

18  Plaintiff greatly exceeded the 15-day limit to file an appeal.

19         ii.  ICC Review Hearing On May 31, 2007 As Triggering Event

20   Next, if the ICC Review Hearing on May 31, 2007 is used as

21  the triggering event, Plaintiff's appeal is still untimely.

22  Plaintiff filed an Informal Level Appeal (again, not appealing the

23  SHO's finding but seeking documentation), on June 21, 2007, 21 days

24  after the ICC confirmed the SHO's findings.  If the Court finds that

25  Plaintiff specifically appealed the ICC Review in his Second Level

26  Appeal dated July 8, 2007, Plaintiff's appeal is even more untimely,

27

28

11cv2202

having been filed 38 days after the ICC Review hearing that confirmed the SHO's findings.

Alternatively, Plaintiff asserts in his Opposition that if administrative remedies were made available to him, he timely filed his Second Level Appeal because it was within fifteen days "after receiving" a copy of the ICC decision. (Opposition at 21.) This is contrary to Plaintiff's asserted position in his Complaint wherein he states that all he needed to file an appeal was the SHO's findings, which he received on May 23, 2007. (See SAC at 3, 4.) Plaintiff cites to Cal. Code of Regs. 15, § 3084.6(c), and contends that the 15-day time limit applies to the date after "*receiving* an unacceptable lower level appeal decision." (Opposition at 21 emphasis added.) Although Plaintiff accurately cites to § 3084.6(c), he misapplies it. When Plaintiff filed his Second Level Appeal, he was not appealing the ICC *decision*. Instead, his Second Level Appeal was challenging the SHO's First Level *guilty finding* which was entered on April 13, 2007. (Exhibit 3 at 38.)

        b.    Defendant's Rejection Of Plaintiff's Grievances Did Not Relieve Him Of His Obligation To Fully Exhaust Administrative Remedies

In a secondary argument, Plaintiff contends that since Defendants "repeatedly screened-out... (his) appeals, the grievance procedure ha(d) been rendered 'unavailable' to him." (Opposition at 12, 16, 23; citing to Harvey v. Jordan, 605 F.3d 681, 684-85 (9th Cir. 2010) ("There is no obligation to appeal from a decision when the rejection form states that the 'action may not be appealed.'"); Fone3All Corp. V. Federal Comm'n., 550 F.3d 811, 818 (9th Cir. 2008)

1  [not requiring exhaustion where "pursuit of administrative remedies
2  would be a futile gesture."]; see generally Little v. Jones, 607
3  F.3d 1245 (10th Cir. 2010) ["Where prison officials prevent, thwart,
4  or hinder a prisoner's efforts to avail himself of an administrative
5  remedy they render that remedy 'unavailable' and a court will excuse
6  the prisoner's failure to exhaust."] his appeals were repeatedly
7  screened out, and stated "Do not return this appeal again or it will
8  not be returned," he exhausted "all avenues of administrative review
9  available to him."  (Opposition at 21, 23.)

10       Plaintiff's reliance on Harvey v. Jordan is misplaced.  In
11  Harvey, the Ninth Circuit held that an inmate exhausted all of his
12  administrative remedies after he filed an appeal that was screened
13  out for untimeliness and where the appeal screening form noted that
14  the action "may not be appealed."  Harvey, 605 F.3d at  685-86.
15  However, prior to the untimely appeal, prison authorities granted
16  the inmate's original appeal of a disciplinary violation.  Id. at
17  685.  Five months later, when the inmate had not received the relief
18  he was promised, namely, a disciplinary hearing and access to
19  evidence, he filed the untimely appeal "reminding" prison
20  authorities to provide him with such.  Id.  The appellate court held
21  that when prison officials promised to grant the inmate the relief
22  he sought in his original appeal, the inmate's obligation to exhaust
23  ended.  Id.

24       Unlike in Harvey, prison authorities never purported to
25  provide Plaintiff with a reversal of the disciplinary finding.
26  Although Plaintiff submitted grievances at all four levels, prison

27
28

-18-                                        11cv2202

officials properly cancelled them because Plaintiff failed to file them within the prescribed time limits.   California regulations provide that if "[t]ime limits for submitting the appeal are exceeded and appellant had the opportunity to file within the prescribed time constraints," the appeal will result in cancellation.   Cal. Code Regs. 15, § 3084.3(c)(6)(2007).   Thus, Plaintiff's grievances were properly cancelled and he was neither afforded, nor led to believe that he had received, the relief he sought like the inmate in Harvey.   Harvey, 605 F.3d at 683; see Sapp v. Kimbrell, 623 F.3d 813, 828 (9th Cir. 2010) (an inmate fails to exhaust when prison authorities properly screen out his appeal). Therefore, Plaintiff's obligation to exhaust his administrative remedies never ceased.

> c.   Defendants Were Not Required To Excuse Plaintiff's Non-Compliance

Plaintiff essentially concedes that he untimely submitted his appeal. (Opposition at 19.) However, Plaintiff contends that despite his untimeliness, CDCR personnel still should have considered his appeal.  (Opposition at at 19-20.) He points to Cal. Code of Regs. 15, § 3000.5(f) which states: "The time limits specified in these regulations do not create a right to have the specified action taken within the time limits.   The time limits are directory, and the failure to meet them does not preclude taking the specified action beyond the time limits." (Opposition at 20.)   The Court disagrees with Plaintiff's interpretation of § 3000.5(f).

First, while it may be true that prison authorities need not comply with the time limits imposed by the prison's regulations, Plaintiff fails to allege in the SAC that *his* failure to timely appeal was excused.  Although prison officials had the authority to excuse Plaintiff's non-compliance with the appeal time requirements, as the time limits are "directory," this does not mean that Defendants had a mandatory duty to exercise that authority for Plaintiff's benefit.

Further, Plaintiff's central argument is that he was unable to timely exhaust his administrative remedies because Defendants failed to provide him with the disciplinary finding Inmate Copy within five working days.  (SAC at 11; Opposition at 20); citing to 15 Cal. Code. Regs. § 3320(l).  However, using Plaintiff's own interpretation of § 3000.5(f), CDCR personnel were *not required to* provide Plaintiff with copies of the disciplinary findings within the prescribed time limits and their failure to do so did not relieve Plaintiff of the duty to file a timely appeal.

Therefore, Plaintiff has not demonstrated that CDCR authorities had a duty to consider his appeal despite its untimeliness.  Given the aforementioned considerations, Plaintiff's arguments that he was unable to exhaust his administrative remedies, or that he did properly exhaust his administrative remedies, are without merit.

> 2.   Plaintiff Failed To Exhaust His Administrative
>      Remedies For His § 1983 Claims

1        Plaintiff also failed to show that he completed the four

2    steps with regard to his current 42 U.S.C. § 1983 claims as pled in

3    the SAC. Inmates must exhaust all claims involving prison

4    conditions, including deprivation of constitutional rights, prior to

5    initiating a federal suit. See Porter v. Nussle, 534 U.S. 516, 523,

6    532 (2002). Here, Plaintiff's claim is that Defendants prevented

7    him from timely appealing the SHO's guilty finding of possession of

8    an inmate-manufactured weapon in violation of his First and

9    Fourteenth Amendment rights. This issue is separate and distinct

10    from his claim that the SHO's guilty finding should be reversed.

11    (See Exhibit 3 at 38.) The Court notes that, prior to filing his

12    claim in federal court, Plaintiff's only notices to the CDC of a 42

13    U.S.C. § 1983 claim were in his Informal Level appeal for the ICC

14    documents and the Second Level Appeal of the disciplinary finding.

15    In the informal appeal, Plaintiff mentioned that "the delay of [the]

16    documents [were] hindering [his] appeal process rights." (Exhibit

17    2 at 36.) In the Second Level Appeal, Plaintiff explained that CDC

18    failed to provide him with the necessary documents to timely appeal

19    the SHO's findings. (Exhibit 5 at 44.)

20        These statements are insufficient to establish that Plaintiff

21    attempted to exhaust his administrative remedies relating to his 42

22    U.S.C. § 1983 claims. At the informal level, Plaintiff merely

23    established why he was entitled to the ICC documents. At the Second

24    Level Appeal, Plaintiff was attempting to justify why his appeal was

25    untimely. Furthermore, those statements in the Second Level Appeal

26    were provided as a supplement to his re-submitted appeal for

27

28

reversal of the SHO's findings.  (Exhibit 5 at 44.)  Additionally, in both appeals, in the section of the appeal form titled "Action Requested," Plaintiff did not list any relief related to his 42 U.S.C. § 1983 claims.  Instead, both of his requested actions related to his RVR claim.

Plaintiff asserts in his Opposition that he submitted an Inmate Appeal on July 29, 2007, "complaining exactly of the violation of his rights stated in this civil action complaint." (Opposition at 19.)  He alleges that the Appeals Coordinator's Office failed to process the appeal, and that a copy of it was appealed at the Director's Level on August 16, 2007.  (Id.) However, Plaintiff fails to attach any exhibits supporting this assertion, and fails to plead any other facts in support of these allegations.  Therefore, the Court "need not accept the allegations as being true." See Roth, 942 F.2d 625 n.1; see also Sherman, 549 F.2d at 1290 (9th Cir. 1977) ("Conclusory allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.")

Even assuming the truth of Plaintiff's allegations and considering his arguments in the light most favorable to him, Plaintiff has not pled that he exhausted the administrative remedies available to him in relation to his 42 U.S.C. § 1983 claims.

Consequently, this Court RECOMMENDS that Defendant's Motion to Dismiss be GRANTED as to Plaintiff's 42 U.S.C. § 1983 claims.

> B.   THERE IS NO DUE PROCESS RIGHT TO INMATE GRIEVANCE PROCEDURES

The Fourteenth Amendment provides that: "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Board of Regents v. Roth, 408 U.S. 564, 569 (1972). State statutes and prison regulations may grant prisoners liberty or property interests sufficient to invoke due process protection. Meachum v. Fano, 427 U.S. 215, 223-27 (1976). To state a procedural due process claim, Plaintiff must allege: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." Wright v. Riveland, 219 F.3d 905, 913 (9th Cir. 2000).

However, the Ninth Circuit has held that prisoners have no protected *property* interest in an inmate grievance procedure arising directly from the Due Process Clause. See Ramirez v.Galaza, 334 F.3d 850, 869 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure") [citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988)] [finding that the due process clause of the Fourteenth Amendment creates "no legitimate claim of entitlement to a (prison) grievance procedure"]; accord Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (1995); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

In addition, Plaintiff has failed to plead facts sufficient to show that prison officials deprived him of a protected *liberty* interest by allegedly failing to respond to his prison grievances in

a manner that was satisfactory to him.  While a liberty interest can arise from state law or prison regulations, <u>Meachum</u>, 427 U.S. at 223-27, due process protections are implicated only if Plaintiff alleges facts to show that Defendants: (1) restrained his freedom in a manner not expected from his sentence, and (2) "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995); <u>Neal v. Shimoda</u>, 131 F.3d 818, 827-28 (9th Cir. 1997).

In the SAC, Plaintiff asserts that his due process rights were violated because, based on his inability to successfully appeal the disciplinary violation finding, he was:

> 1) denied the right to receive the "Inmate Copy" of the CDC 115
>
> 2) denied the right to have the disposition vacated and have the charges dismissed
>
> 3) denied the right to appeal the disciplinary findings within the required time limits
>
> 4) subjected to the loss of his work/job assignment
>
> 6) subjected to the serving of a 10-month SHU term
>
> 7) subjected to an increase in classification score points from 41-points to 61-points
>
> 8) subjected to a transfer from a low level-III institution to a higher lever-IV institution, and
>
> 9) subjected to a reduction in work group privilege status from Privilege Group-A1, full time assignment reduced to lower Privilege Group-B, unassigned
>
> (SAC at 7.)

Plaintiff's allegations are not cognizable under 42 U.S.C. § 1983. First, Plaintiff was provided with due process. He had a right to appeal the RVR disposition and ultimately have the findings vacated.  (<u>See</u> Section IV, <u>supra</u>; <u>see also</u> 15 Cal.Code.Regs. §

11cv2202

3084.1, 3084.6(c) (an inmate has a right to appeal any departmental decision so long as it is within 15 days).  Plaintiff concedes in the SAC that he received a copy of the findings and final disposition of the SHO's findings and subsequent ICC review.  (SAC at 3, 4, 16.)  Even in construing the SAC in the light most favorable to Plaintiff, Kaplan, 792 F.2d at 898, and taking into account all documents provided by Plaintiff, Roth, 942 F.2d 625 n.1, the Court has reasonably found that Plaintiff simply failed to appeal the disciplinary violation in accordance with the prison's regulations.  See Section V.1 of this Report and Recommendation; see also 15 Cal.Code.Regs. § 3084.1; 3084.6(c).  In sum, Plaintiff failed to plead how he was deprived of his constitutional rights.

Second, although Plaintiff listed sanctions that he was "subjected to" as a result of his inability to appeal the disciplinary finding, the attached documents indicate that Plaintiff was, in fact, given different penalties.  Typically, a finding of guilt for possessing a weapon in prison carries a penalty of 10 months in the SHU.  However, prison authorities determined that based on Plaintiff's "minor disciplinary history," there were no aggravating factors to impose the full sanction.  As a result, Plaintiff served a mitigated term of eight months in SHU. (SAC, Exhibit 1 at 37.) Since Plaintiff is serving an indeterminate sentence, placement in the SHU did not impose "a dramatic departure from the basic conditions" of his confinement.  Sandin, 515 U.S. at 486 ("[D]isciplinary segregation... mirror[s] those conditions imposed upon inmates in administrative segregation and protective

custody"). Nor did it affect his sentence length or minimum eligible release date. (See Exhibit 1 at 37.)

Additionally, Plaintiff's custody placement score increased from 41 to 61, which resulted in higher-security housing placement for approximately four months. (Exhibit 1 at 37.) His work assignment as "small management yard and DC housing" remained the same. (Id.) Despite that Plaintiff did not lose his job, there is no protected liberty interest in obtaining or maintaining work while incarcerated. Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004) ["(T)he Due Process Clause of the Fourteenth Amendment "does not create a property or liberty interest in prison employment"].

Therefore, Plaintiff's SAC fails to plead how the allegedly inadequate review and consideration of his inmate grievances resulted in an "atypical" and "significant hardship," or imposed a punishment in a manner "not expected from his sentence." Sandin, 515 U.S. at 483-84. Thus, to the extent Plaintiff challenges the procedural adequacy of inmate grievance procedures, the SAC fails to state a due process claim.

C.   *SUA SPONTE* DISMISSAL PURSUANT TO 28 U.S.C. § 1915A

Plaintiff's SAC is also subject to dismissal for failure to state a claim under Heck v. Humphrey, 512 U.S. 477 (1994). Pursuant to 28 U.S.C. § 1915A, all federal courts are required to engage in a preliminary screening of cases filed by prisoners that seek redress from a governmental entity, officer, or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss such a complaint, or any portion of such a complaint, which

1  is frivolous, malicious, or fails to state a claim upon which relief

2  may be granted.  Id., Resnick v. Hayes, 213 F.3d 443, 446-47 (9th

3  Cir. 2000).

4      Under Heck, before Plaintiff may seek damages related to his

5  incarceration, he must show that the conviction referenced in his

6  Complaint has already been:  (1) reversed on direct appeal;

7  (2) expunged by executive order; (3) declared invalid by a state

8  tribunal authorized to make such a determination; or (4) called into

9  question by the issuance of a writ of habeas corpus. Heck, 512 U.S.

10  at 487; see Edwards v. Balisock, 520 U.S. 641, 648 (1997) (finding

11  that Heck applies to a challenge to prison disciplinary proceedings

12  and sanctions).  A civil rights claim challenging the legality of a

13  conviction or the length of confinement that has not been so

14  invalidated is not cognizable under § 1983.  Heck, 512 U.S. at 487;

15  Edwards, 520 U.S. 641, 643 (1997).

16      To the extent Plaintiff seeks money damages based on his

17  claims that Defendants failed to redress inmate grievances, his

18  Complaint is subject to sua sponte dismissal under §1915A because a

19  finding in his favor would necessarily imply the invalidity of the

20  guilty finding for his possession of an inmate-manufactured weapon.

21  See Heck, 512 U.S. at 486-87; see also Edwards, 520 U.S. at 644,

22  646-48 (1997) [finding that a "challenge to (disciplinary)

23  procedures could be such as necessarily to imply the invalidity of

24  the judgment."").  Plaintiff has not demonstrated to the Court that

25  he has satisfied Heck by having his conviction declared invalid.

26  Therefore, before any cause of action for damages accrues related to

27

28

Plaintiff's disciplinary finding, he must first allege facts which show that the finding has already been invalidated. <u>Heck</u>, 512 U.S. at 487; <u>Edwards</u>, 520 U.S. at 648. Thus, the Court finds that Plaintiff's Complaint fails to state a claim upon which relief may be granted and thus, must be dismissed pursuant to 28 U.S.C. § 1915A.

VII

<u>CONCLUSION</u>

The Court, having reviewed Plaintiff's SAC, Defendants' Motion to Dismiss, Plaintiff's Opposition to the Motion to Dismiss, Defendants' Reply to Plaintiff's Opposition, and all the documents submitted therewith, and the documents submitted by Plaintiff with his First Amended Complaint, HEREBY RECOMMENDS:

1.   Defendants' Motion to Dismiss regarding Plaintiff's failure to exhaust his administrative remedies be GRANTED.

2.   Defendants' Motion to Dismiss regarding Plaintiff's First Amendment claim be GRANTED.

3.   Defendants' Motion to Dismiss regarding Plaintiff's Fourteenth Amendment claim be GRANTED.

For the aforementioned reasons, the Court RECOMMENDS Defendant's Motion to Dismiss be GRANTED. The Court further RECOMMENDS that Plaintiff's Complaint be DISMISSED WITHOUT PREJUDICE to afford Plaintiff an opportunity to cure the deficiencies in the SAC as noted in this Report and Recommendation.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. Section 636(b)(1).

**IT IS ORDERED** that no later than <u>December 4, 2012</u>, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than <u>December 18, 2012</u>.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:   November 6, 2012

Hon. William V. Gallo
U.S. Magistrate Judge